JOHN REINING, Appellant, v. THOMAS NEVISON, Sheriff, et al., Appellees.

**JUDGMENT:** Conclusiveness—Discharge in Bankruptcy. A decree to the effect that a conveyance was fraudulent as to a judgment plaintiff is immune from subsequent attack on the ground that, *when the decree was rendered,* the judgment in question had been discharged in bankruptcy, such fact not having been pleaded in said action.

**JUDGMENT:** Conclusiveness—Homestead Exemption—Waiver. A decree to the effect that a conveyance was fraudulent as to a judgment plaintiff, and that plaintiff's judgment was a lien on the land, is immune from subsequent attack on the ground that the land was, at the time of the conveyance, the homestead of the grantor and grantee, such fact not being pleaded in the action.

**FRAUDULENT CONVEYANCES:** Good-faith Purchaser—Nonpayment —Effect. The purchaser of land from a fraudulent grantee will not be protected as a purchaser in good faith and for a valuable consideration when, at the time notice of the fraud is brought home to him,

the purchase-price note was in the hands of the grantor and *unpaid.*
**Headnotes 1, 2:** 34 C. J. p. 567. **Headnote 3:** 27 C. J. p. 698 (Anno.)
**Headnote 3:** 27 R. C. L. 693.

*Appeal from Emmet District Court.*—D. F. COYLE, Judge.

### MAY 3, 1927.

Action in equity, to enjoin the sale of property under execution. The plaintiff appeals from a judgment dismissing his petition.—*Affirmed.*

*F. J. Kennedy* and *Thomas O'Connor,* for appellant.

*Morse & Lee,* for appellees.

VERMILION, J.—The controlling facts are shown, without dispute, in the record.

On November 19, 1923, the appellee Knowles, receiver of the Emmet County Bank and of Graves, Breen & Company, recovered a judgment against Jacob Reining. Previous to the

1. JUDGMENT: con-clusiveness: dis-charge in bank-ruptcy.

rendition of this judgment, Jacob Reining had conveyed the property in question, an out lot in the town of Armstrong, to his wife, Anna Reining. On May 1, 1924, Knowles commenced an action in equity against Jacob and Anna Reining, to set aside the conveyance above mentioned as fraudulent, and to subject the property conveyed to the payment of his judgment. Facts were alleged in the petition from which it appeared that Jacob and Anna Reining did not occupy the property as a homestead prior to the inception of the debt for which the judgment was rendered. Jacob and Anna Reining had due and proper notice of this action, but made no appearance therein until after a decree was entered. Default was taken against them, and on September 18, 1924, a decree was entered, adjudging the deed to be fraudulent as against the judgment of the plaintiff therein, setting the conveyance aside, and establishing the judgment as a lien on the property, superior to any right or interest of the defendants' therein, including any right of homestead, and ordering special execution for the sale of the property, to satisfy the original judgment. An effort appears to have been made to set the de-

cree aside, which was unsuccessful, and no appeal was taken. A special execution was issued and levied on the property. Thereupon, the appellant, John Reining, commenced this action, to enjoin the sale of the property on execution, alleging that he was the owner of the property, and that the sale thereof under the execution would create a cloud upon his title. It is sufficient to say of the pleadings in the present action that they properly present the questions upon which appellant relies, and also those which, in our judgment, are determinative of the case.

It is without dispute that, on April 17, 1924, Jacob Reining filed in the proper United States district court a petition in voluntary bankruptcy; that he was duly adjudged a bankrupt, and was, on September 10, 1924, discharged in bankruptcy. The judgment in favor of Knowles was scheduled by the bankrupt. Knowles had knowledge of the bankruptcy proceedings, but did not file a claim therein, based on his judgment, relying, as he asserts, on his lien and equitable rights against the property in question; and the property was not included in the assets administered upon in the bankruptcy court.

On August 7, 1924, and while the action to set aside the conveyance to Anna Reining was pending, Anna and Jacob Reining conveyed the property in question to the appellant, John Reining. The consideration for the conveyance was $1,785. There was a mortgage on the property for $785, which appellant assumed and agreed to pay, and he gave his note for $1,000, due August 7, 1925, to Anna Reining for the remainder of the consideration. This note is in the hands of the payee, and unpaid.

The indexing by the clerk of the action wherein it was sought to set aside the conveyance from Jacob to Anna Reining and to subject the property to the appellee's judgment, did not, owing to an erroneous description of the property, charge third persons with notice of its pendency, under Section 11093, Code of 1924. The appellant, however, paid no part of the purchase price of the property before the commencement by him of the instant action to enjoin the execution sale, and had paid nothing but a small amount of interest on the mortgage at the time of the trial herein below.

I. Appellant's chief contention is that the decree subjecting the property to the payment of appellee's judgment is ineffectual and void, because of the adjudication and discharge of

Jacob Reining in the bankruptcy proceedings. The argument, in brief, is that the judgment against Jacob Reining was not a lien upon the property previously conveyed by him to Anna Reining, at the time of the adjudication in bankruptcy; that the debt evidenced by the judgment was discharged by the discharge in bankruptcy; and that appellee could not thereafter, by his action to subject the property to his judgment, acquire a lien for a debt that had been discharged in the bankruptcy proceedings; that it is only a lien existing before, and unaffected by, the adjudication and discharge in bankruptcy that can be enforced after and notwithstanding the discharge of the debtor; and that a lien could not by such proceedings be created and established for a debt that had been discharged.

For the present purpose, it may be conceded that this would have been true, had Jacob Reining's bankruptcy been pleaded in defense of the action to subject the property to the judgment. But the court in that action had jurisdiction of the parties and of the subject-matter.

"It could not take judicial notice of the proceedings in bankruptcy in another court, however seriously they might have affected the rights of parties to the suit already pending." *Eyster v. Gaff*, 91 U. S. 521 (23 L. Ed. 403).

See, also, *Boynton v. Ball*, 121 U. S. 457 (30 L. Ed. 985); *Bank of Commerce v. Elliott*, 109 Wis. 648 (85 N. W. 417); *Herschman v. Justices of the Municipal Court*, 220 Mass. 137 (107 N. E. 543).

In *Dimock v. Revere Copper Co.*, 117 U. S. 559 (29 L. Ed. 994), the action had been commenced in the state of New York upon a judgment rendered in Massachusetts against one who had been adjudged a bankrupt while the first suit was pending. The discharge in bankruptcy was not pleaded in the first action, but was pleaded in the action on the judgment. It was held to be no defense. The court said:

"So here, if Dimock had brought his discharge to the attention of the superior court at any time before judgment, it would have been received as a bar to the action, and, under proper circumstances, even after judgment, it might be made the foundation for setting it aside and admitting the defense. *Ray v. Wight*, 119 Mass. 426; *Page v. Cole*, 123 Mass. 93; *Golden v. Blaskopf*, 126 Mass. 523. Nothing of the kind was attempted.

The question before the Massachusetts court for decision, at the moment it rendered its judgment, was whether Dimock was *then* indebted to the Copper Company. Of Dimock and of this question it had complete jurisdiction, and it was bound to decide it on the evidence before it. Its decision was, therefore, conclusive, as much so as any judgment where the jurisdiction is complete. It concluded Mr. Dimock from ever denying that he was so indebted on that day, wherever that judgment was produced as evidence of the debt. If he had the means at that time to prove that the debt had been paid, released, or otherwise satisfied, and did not show it to the court, he cannot be permitted to do it in this suit; and the fact that the evidence that he did not then owe the debt was the discharge in bankruptcy, made five days before, does not differ from a payment and receipt in full or a release for a valuable consideration.''

In that case, it was unsuccessfully urged that the judgment sued on was for a debt that was one of those from which the bankrupt was discharged, and that to any attempt to enforce the judgment the discharge might be shown as a valid defense. The court said:

''We are of opinion that, having in his hands a good defense at the time judgment was rendered against him,—namely, the order of discharge,—and having failed to present it to a court which had jurisdiction of his case, and of all the defenses which he might have made, including this, the judgment is a valid judgment, and that the defense cannot be set up here in an action on that judgment.''

Cases involving the effect of a pleaded defense of a discharge in bankruptcy are not in point.

We may assume that, had it been pleaded in the action to subject the property to the payment of the judgment that the judgment and the debt evidenced by it had been discharged in the bankruptcy proceedings, this would have presented a good defense. That this might have been done is apparent, for the discharge in bankruptcy was eight days before the decree in that action was entered. But, since it was not so pleaded, the decree cannot be collaterally attacked on that ground. The decree, in the absence of such plea, is as conclusive on the question as would have been an erroneous refusal by the court to sustain the defense, had it been pleaded. In such case, the remedy

would have been by appeal,—not by another assertion of the defense in an action to enforce the judgment. *Dimock v. Revere Copper Co.,* supra; *Stone v. Schneider-Davis Co.,* 51 Tex. Civ. App. 517 (112 S. W. 133).

II.   The decree is also conclusive as against appellant's

2. JUDGMENT: conclusiveness: homestead exemption: waiver. contention that the property was not subject to the payment of the judgment because it was the homestead of Jacob and Anna Reining.

III.   The appellant is in the position of a purchaser from a fraudulent grantee, and rested under the burden of showing that he was a purchaser in good faith, for a valuable consider-

3. FRAUDULENT CONVEYANCES: good-faith purchaser: nonpayment: effect. ation. *Sillyman v. King,* 36 Iowa 207; *Throck-morton v. Rider,* 42 Iowa 84; *Rush v. Mitchell,* 71 Iowa 333; *Long v. Garey Inv. Co.,* 135 Iowa 398; *Dolan v. Newberry,* 200 Iowa 511.   To be

entitled to protection as such a purchaser, he must have paid the purchase price before notice of the equity of the appellee Knowles. *Sillyman v. King,* supra; *Kitteridge v. Chapman,* 36 Iowa 348; *Rush v. Mitchell,* supra; *Rine v. Wagner,* 135 Iowa 626; *Morse v. Rhinehart,* 195 Iowa 419.   The giving of a note or other obligation therefor which remained unpaid in the hands of the vendor is not such payment as was required, to constitute him a bona-fide purchaser for value. *Kitteridge v. Chapman,* supra; *Rush v. Mitchell,* supra.

Notwithstanding the failure of the indexing of the action to charge him with notice of the claim of Knowles, he had paid no part of the purchase price prior to commencing this action, at which time he had such notice, and only an inconsiderable portion before the trial below.   He is clearly, under the authorities cited, not entitled to protection as a good-faith purchaser for value.

The judgment must be, and is,—*Affirmed.*

EVANS, C. J., and STEVENS, FAVILLE, and KINDIG, JJ., concur.

MORLING, J., not participating.