# IN THE SUPREME COURT OF IOWA

No. 16–1136

Filed October 27, 2017

**LINDA LINN** and **MARK SHUCK,**

Appellants,

vs.

**PAT MONTGOMERY, CHRISTY SCHRADER,** and **BRAD ALLEN,**

Appellees.

Appeal from the Iowa District Court for Scott County, J. Hobart Darbyshire (ruling on defendant Montgomery's motion for summary judgment), Marlita A. Greve (ruling on defendant Schrader's motion for summary judgment), Thomas G. Reidel (trial), Judges.

Plaintiff appeals the district court order granting defendants' motions for summary judgment. **AFFIRMED.**

Peter C. Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellants.

Elliott R. McDonald III and Ryan F. Gerdes of McDonald, Woodward & Carlson, P.C., Davenport, for appellee Pat Montgomery.

Clark I. Mitchell and Aaron W. Lindebak of Grefe & Sidney, P.L.C., Des Moines, for appellee Christy Schrader.

Paula L. Roby and Nicholas J. Kilburg of Elderkin & Pirnie, P.L.C., Cedar Rapids, for appellee Brad Allen.

**WIGGINS, Justice.**

In this appeal, a plaintiff asks our court to decide if the district court properly granted summary judgment and partial summary judgment on his defamation claim based on the running of the statute of limitations. Additionally, we must determine if the court properly granted summary judgment on the plaintiff's malicious prosecution claim on the ground the defendants merely furnished information to law enforcement and thus, did not instigate his criminal prosecution. Due to an answer to a special interrogatory by the jury, we do not reach the statute of limitations arguments made on the defamation claim. On the malicious prosecution claim, we affirm the decision of the district court. Accordingly, we affirm the judgment of the district court.

## I. Relevant Facts.

Linda Linn and Mark Shuck are spouses who resided in a condominium complex called Partridge Villa Building X (Building X) in Bettendorf, Scott County, Iowa. From 2004 to 2008, Shuck served as the president of the homeowners' association of Building X. Patrick Montgomery and Christy Schrader also resided in Building X. In 2012, Montgomery and Schrader reviewed financial records of Building X and prepared a written report of alleged wrongdoings by Linn and Shuck while he was president.

On two occasions in January 2012, Montgomery spoke to an assistant county attorney with the Scott County attorney's office. In the initial meeting, after discussing the wrongdoings Linn and Shuck had allegedly perpetrated, Montgomery learned from the assistant county attorney that the statute of limitations barred all of the allegations. Montgomery then investigated further and, presumably for the first time, came across an alleged unauthorized water line scheme. This scheme

concerned alleged unauthorized payments from the funds of the homeowners' association toward a water meter with a water line that serviced an outdoor spigot attached to the wall of Linn and Shuck's unit.

On December 17, 2012, Montgomery delivered a binder summarizing the alleged wrongdoings by Linn and Shuck, including the water line scheme, to Officer Dennis Tripp with the Bettendorf Police Department. On March 4, 2013, Detective Brad Levetzow with the Bettendorf Police Department met with Montgomery to discuss the matters addressed in the binder. On March 12, Detective Levetzow interviewed Schrader about the alleged unauthorized charges and Shuck's alleged involvement. Two days later, Detective Levetzow initiated criminal charges by filing a criminal complaint and affidavit. The criminal complaint and affidavit alleged Shuck had committed theft by misappropriating homeowners' association funds to pay water bills from June 24, 1997, to March 16, 2010.

On April 31, 2013, an assistant county attorney filed a trial information formally charging Shuck with second-degree theft. On July 3, the court dismissed the information against Shuck because the theft charge fell outside the applicable statute of limitations.

## II. Procedural History.

On March 10, 2015, Linn and Shuck filed a petition in Scott County District Court, claiming defamation and malicious prosecution. Linn also alleged a loss of consortium claim.[1] Montgomery and Schrader filed separate motions for summary judgment.

---

[1]Linn and Shuck filed additional claims as well as claims against another defendant. They did not appeal these claims, and we will not discuss the claims in this opinion.

Specifically, Montgomery and Schrader argued they were entitled to summary judgment on the defamation claim as a whole and partial summary judgment on Shuck's defamation claim, respectively, because statements uttered before March 10, 2013, fell outside the two-year statute of limitations.[2] Schrader further argued she was entitled to summary judgment with respect to Linn's defamation claim because the summary judgment record lacked any indication that Schrader had defamed Linn. Unlike Schrader, Montgomery also sought summary judgment on Linn's loss of consortium claim. As for the malicious prosecution claim, Montgomery and Schrader asserted the ultimate decision whether to proceed with a criminal action rested with the county attorney's office. Thus, they argued, the malicious prosecution claim must fail.

In resisting the motions for summary judgment, Linn and Shuck contended the discovery rule should apply to defamatory statements that are secretive or inherently undiscoverable, such as statements made to law enforcement, which are not public until the filing of the criminal complaint and minutes of testimony. Linn and Shuck alternatively argued the original defamer is liable for damages resulting from reasonably foreseeable republication or repetition of the statements.

With respect to their malicious prosecution claim, Linn and Shuck argued Montgomery and Schrader knowingly made false assertions of wrongdoing because they knew about the alleged water line scheme but did not raise the issue in Montgomery's first meeting with the assistant

---

[2]The summary judgment record shows Montgomery did not make defamatory statements on or subsequent to March 10, 2013. On the other hand, Schrader allegedly made defamatory statements on March 12. Thus, the March 12 statements fall within the two-year statute of limitations.

county attorney. Thus, according to Linn and Shuck, Montgomery and Schrader did not believe the water line constituted criminal wrongdoing.

The court granted summary judgment in favor of Montgomery on Linn and Shuck's defamation and malicious prosecution claims but denied summary judgment as to Linn's loss of consortium claim. As to Schrader, the court granted partial summary judgment on Shuck's defamation claim as to any statements made before March 10, 2013, summary judgment on Linn's defamation claim, and summary judgment on Linn and Shuck's malicious prosecution claim.

Shuck's defamation claim against Schrader for statements made on or after March 10, 2013, and Linn's claim for her loss of consortium with her husband Shuck, based on the defamatory remarks made by Montgomery and Schrader, proceeded to a jury trial. In regards to Linn's loss of consortium claim, the court allowed the jury to consider all of the alleged defamatory remarks made by Montgomery and Schrader, including those made before March 10, 2013.

The jury returned a verdict in favor of Montgomery and Schrader. Shuck and Linn filed a notice of appeal. However, only Shuck raises any issues in this appeal. Therefore, we will not consider any claims of Linn. We will lay out additional facts as needed.

### III. Issues.

Shuck raises two issues on appeal. First, whether the district court erred in granting Montgomery summary judgment and Schrader partial summary judgment on the ground the statute of limitations barred Shuck's defamation claim for statements they made before March 10, 2013. Second, whether the district court erred in granting summary judgment on Shuck's malicious prosecution claim.

### IV. Scope of Review.

We review summary judgment motions for corrections of errors at law. *Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 434 (Iowa 2008). Summary judgment is proper only when the entire record demonstrates the absence of a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3); *Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 827 (Iowa 2007). Our review is accordingly "limited to whether a genuine issue of material fact exists and whether the district court correctly applied the law." *Pillsbury*, 752 N.W.2d at 434.

A fact is material when its determination might affect the outcome of a suit. *Walker v. State*, 801 N.W.2d 548, 554 (Iowa 2011). A genuine issue of material fact exists when reasonable minds can differ as to how a factual question should be resolved. *Id.* Montgomery and Schrader, as the respective moving parties, bear the burden of showing the absence of material facts. *C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 73 (Iowa 2011). Shuck, as the nonmoving party, "cannot rely on the mere assertions in his pleadings but must come forward with evidence to demonstrate that a genuine issue of fact is presented." *Stevens*, 728 N.W.2d at 827.

In reviewing the court's summary judgment ruling, we view the record in the light most favorable to the nonmoving party. *Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 501 (Iowa 2013). We draw all legitimate inferences the evidence bears that will establish a genuine issue of material fact. *Wolfe*, 795 N.W.2d at 73. However, if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, the district court should grant a party's

motion for summary judgment. *Nationwide Mut. Ins. v. Kelly*, 687 N.W.2d 272, 274 (Iowa 2004).

**V. Whether the District Court Erred in Granting Schrader Partial Summary Judgment and Montgomery Summary Judgment on the Ground the Statute of Limitations Barred Shuck's Defamation Claim for Statements Made Before March 10, 2013.**

First, Shuck contends the two-year statute of limitations contained in Iowa Code section 614.1(2) pertaining to defamation is subject to the discovery rule. Section 614.1(2) provides,

> Actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially declared:
>
> . . . .
>
> . . . Those founded on injuries to the person or reputation, including injuries to relative rights, whether based on contract or tort, . . . within two years.

Iowa Code § 614.1(2) (2015).

We have adopted the discovery rule for negligence claims leading to injuries to one's interest under this section in *Chrischilles v. Griswold*, 260 Iowa 453, 463, 150 N.W.2d 94, 100–01 (1967). We have not decided whether the discovery rule applies to this statute for nonnegligence claims such as defamation.[3] Second, Shuck argues each republication of a defamatory statement begins the running of the statute of limitations anew. However, based on the jury's answer to a special interrogatory, we will not reach the statute of limitations issues.

In order to prove a loss of consortium claim, the spouse must prove the defendant committed a tort against the other spouse. *See Audubon-Exira Ready Mix, Inc. v. Ill. Cent. Gulf R.R.*, 335 N.W.2d 148, 149

---

[3]The district court relied on *Kiner v. Reliance Ins.*, 463 N.W.2d 9 (Iowa 1990), to support its conclusion the discovery rule does not apply. However, in *Kiner*, the plaintiff did not argue the discovery rule. *Id.* at 13–14.

(Iowa 1983). Thus, in order for Linn to recover on her loss of consortium claim, she must prove Montgomery or Schrader defamed Shuck. The court instructed the jury on the underlying defamation claim as follows:

INSTRUCTION NO. 10

In deciding whether the plaintiff Mark Shuck has proven his defamation claim, you are only to consider alleged actions or statements by the defendants that occurred after March 10, 2013. In regards to the claim that Linda Linn suffered a loss of consortium, you may consider all alleged actions or statements by the defendant[s] that may have defamed Mark Shuck.

In its answers to a special interrogatory regarding Linn's loss of consortium claim, the jury found neither Montgomery nor Schrader defamed Shuck before March 10, 2013. This finding by the jury established factually that neither Montgomery nor Schrader defamed Shuck prior to March 10. Therefore, even if the district court had ruled in favor of Shuck on the statute of limitations issues in its ruling on the motions for summary judgment, the jury would have found no defamation occurred prior to March 10, and the court would have entered judgment against Shuck on his precluded defamation claim.

Generally, "the doctrine of issue preclusion prevents parties to a prior action in which judgment has been entered from relitigating in a subsequent action issues raised and resolved in the previous action." *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981) (footnote omitted). We do not require mutuality of parties to apply the doctrine of issue preclusion. *Id.* at 123, 125. The purpose of issue preclusion is to "prevent needless relitigation and therefore promote judicial economy." *Id.* at 124. The four prerequisites required to apply issue preclusion are

(1) the issue concluded must be identical; (2) the issue must have been raised and litigated in the prior action; (3) the

issue must have been material and relevant to the disposition of the prior action; and (4) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

*Id.* at 123. The issue then becomes were these prerequisites established by the verdict in Linn's loss of consortium claim.

**A. The Issue Concluded Must Be Identical.** If the court allowed Shuck to proceed on his defamation claim, he would have to prove the statements made by Montgomery or Schrader before March 10, 2013, were defamatory as to him. For Linn to succeed on her loss of consortium claim she would have to prove the statements made by Montgomery or Schrader at any time were defamatory as to Shuck. The jury determined no statements, including those made before March 10, by Montgomery or Schrader were defamatory as to Shuck.

**B. The Issue Must Have Been Raised and Litigated in the Prior Action.** It is clear Linn raised and litigated the issue of whether the statements made by Montgomery or Schrader before March 10, 2013, were defamatory as to Shuck in attempting to prove her loss of consortium claim.

**C. The Issue Must Have Been Material and Relevant to the Disposition of the Prior Action.** The issue of whether the statements made by Montgomery or Schrader before March 10, 2013, were defamatory as to Shuck was material and relevant to Linn's loss of consortium claim.

**D. The Determination Made of the Issue in the Prior Action Must Have Been Necessary and Essential to the Resulting Judgment.** From the above discussion it is evident this prerequisite is also satisfied.

We therefore conclude that if we were to decide the district court erred in granting summary judgment and partial summary judgment on

Shuck's defamation claim based on the statute of limitations, a new trial would be unnecessary due to issue preclusion. *See Griglione v. Martin*, 525 N.W.2d 810, 814 (Iowa 1994) (holding even if the district court erred in not submitting a claim against one defendant, we will not remand the case for new trial if a factual finding against another defendant would preclude the dismissed party from establishing an essential element of the dismissed claim), *overruled on other grounds by Winger v. CM Holdings, L.L.C.*, 881 N.W.2d 433, 446 (Iowa 2016).

Therefore, we will not reach the statute of limitations issues because to do so would be nothing more than giving an advisory opinion.

**VI.  Whether the District Court Erred in Granting Summary Judgment on Shuck's Malicious Prosecution Claim.**

Shuck argues the district court erred in granting summary judgment on his malicious prosecution claim because Montgomery and Schrader's actions went far beyond merely providing information or making an accusation.  Rather, Shuck contends, Montgomery and Schrader instigated or procured his criminal prosecution.

To prevail on a malicious prosecution claim, a plaintiff must establish the following:

> (1) a previous prosecution, (2) instigation of that prosecution by the defendant, (3) termination of that prosecution by acquittal or discharge of the plaintiff, (4) want of probable cause, (5) malice on the part of [the] defendant for bringing the prosecution, and (6) damage to [the] plaintiff.

*Wilson v. Hayes*, 464 N.W.2d 250, 259 (Iowa 1990) (quoting *Royce v. Hoening*, 423 N.W.2d 198, 200 (Iowa 1988)).  At issue in this appeal is the second element—instigation or procurement of the prosecution.

There is no genuine issue of material fact that Montgomery and Schrader merely furnished the information to the authorities and that

the authorities made the decision to bring the criminal charges regarding the water line. Merely furnishing information to the authorities does not instigate or procure a criminal prosecution. *See Lukecart v. Swift & Co.*, 256 Iowa 1268, 1281, 130 N.W.2d 716, 724 (1964) (holding that merely furnishing information to law enforcement or making an accusation does not constitute instigation "if it is left to the uncontrolled choice of [a] third person to bring the proceedings or not as he may see fit" (quoting Restatement (First) of Torts § 653, cmt. *b*, at 382 (Am. Law Inst. 1938)); *cf. Winckel v. Von Maur, Inc.*, 652 N.W.2d 453, 460 (Iowa 2002) (holding that the store security officer instigated criminal prosecution by filing a complaint with the magistrate in order to hold the plaintiff in custody and such a complaint was required before the police could make an arrest), *abrogated on other grounds by Barreca v. Nickolas*, 683 N.W.2d 111 (Iowa 2004).

Shuck contends the rule—merely furnishing information to the authorities fails to rise to the level of instigation or procurement of a criminal prosecution—does not apply when a person knowingly gives false information. Shuck appears to rely on our decision in *Rasmussen Buick-GMC, Inc. v. Roach*, 314 N.W.2d 374, 376–77 (Iowa 1982) (adopting Restatement (Second) of Torts § 653 cmt. *g* (1976)).

Shuck claims a genuine issue of material fact exists as to whether Montgomery knew about the alleged water line scheme but did not bring it up in his first meeting with the assistant county attorney in which he learned the statute of limitations barred all of the alleged claims of wrongdoing. Further, only after learning about the barred claims, Shuck asserts, Montgomery brought the water line scheme to the assistant county attorney's attention in a subsequent telephone conversation. Finally, Shuck argues Montgomery and Schrader should have known

about the water line issue because Schrader had shut it off in 2010, well before Montgomery had his first meeting with the assistant county attorney.

In *Rasmussen Buick-GMC*, we stated the general rule in *Lukecart* does not apply when a person knowingly gives false information. *Id.* at 376–77. Applying this exception to the *Lukecart* rule, we reasoned the jury had abundant evidence pointing to the defendant's knowledge regarding the falsity of the information it provided to the Federal Bureau of Investigation (FBI). *Id.* at 376. Thus, we held the defendant procured the criminal prosecution. *Id.* at 377.

*Rasmussen Buick-GMC* did not explicitly answer the question whether the act of knowingly furnishing false information is sufficient to satisfy the instigation element, or whether, in addition to the former, the public official must also rely on the false information. However, we stated in *Rasmussen Buick-GMC* that the jury could have found there would have been no prosecution in the absence of the false information, implying that the FBI relied on the false information in filing a criminal charge against the defendant. *See id.*

The Texas Supreme Court provides compelling reasons why both prongs—the act of knowingly giving false information and reliance by the public official—should be required:

> [A] person who knowingly provides false information to . . . a law enforcement official who has the discretion to decide whether to prosecute a criminal violation cannot be said to have [procured] the prosecution *if the information was immaterial to the decision to prosecute. If the decision to prosecute would have been made with or without the false information*, the [defendant] did not [procure] the prosecution by supplying false information.

*King v. Graham*, 126 S.W.3d 75, 78 (Tex. 2003) (emphasis added).

A recent federal court case is particularly helpful because it resembles some of the facts of this case. *See Perzynski v. Cerro Gordo County*, 953 F. Supp. 2d 916 (N.D. Iowa 2013), *aff'd per curiam*, 557 F. App'x 619 (8th Cir. 2014). In *Perzynski*, the defendants discovered unauthorized edits to the plaintiff's time cards. *Id.* at 921. The defendants met with the chief deputy to explain the situation and asked him to investigate for possible criminal charges. *Id.* They met with the chief deputy again to discuss a report they had prepared with calculations showing unauthorized time clock edits. *Id.* at 922. The chief deputy subsequently conducted an investigation and discussed whether to file criminal charges with the assistant attorney general. *Id.* One of the defendants was present at their final meeting before the chief deputy filed the criminal complaint. *Id.* After the plaintiff voluntarily turned herself in, the assistant attorney general filed the trial information, charging her with theft in the second degree. *Id.* The judge dismissed the charges. *Id.* The plaintiff then sued for malicious prosecution, among other claims. *Id.* at 924.

On her malicious prosecution claim, the plaintiff argued the defendants instigated the prosecution. *Id.* at 931–32. The court noted the plaintiff did not offer any evidence as to whether the defendants improperly influenced the assistant attorney general or whether the assistant attorney general relied on knowingly false information in deciding whether to prosecute. *Id.* at 932. Moreover, as for the chief deputy, the evidence failed to demonstrate the defendants knowingly provided false information or pressured the chief deputy to the extent their motivation was the determining factor in the chief deputy's decision to file the criminal complaint. *Id.* The chief deputy and the assistant attorney general—not the defendants—made the independent decision to

file formal charges. *Id.* The court held the defendants merely provided information or, at most, made an accusation, even if the defendants were upset about the situation and wanted someone held accountable. *Id.*

We now solidify our framework and use it to resolve the issue before us: the question of complete discretion or lack thereof is whether the official relied on the knowingly false information. Thus, the plaintiff must prove the official would not have brought charges in the absence of the false information the defendant knowingly supplied. In other words, the false information must have been material to or the determining factor in the official's decision to prosecute.

Viewing the summary judgment record in the light most favorable to Shuck, we conclude even if Montgomery or Schrader knowingly gave false information, they did not instigate or procure the prosecution. The record contains no evidence whatsoever that either Detective Levetzow or the assistant county attorney relied on the alleged false information in initiating prosecution. Factually, the evidence points the other direction. Of importance is Detective Levetzow's testimony claiming he made his own determination after an independent investigation as to whether the charge had merit and his reliance on the hard evidence—the water bills. Thus, the alleged knowingly false accusations were not material to Detective Levetzow's decision to file a criminal complaint.

To survive summary judgment, the record must contain some evidence from which the jury could find either (1) Montgomery or Schrader knowingly gave false information to Detective Levetzow or the assistant county attorney, and they relied on it in filing the charge or (2) Montgomery or Schrader engaged in actions that went beyond merely supplying information or making an accusation. The record does not support a genuine issue of material fact exists as to the instigation or

procurement element.   Therefore, Shuck's malicious prosecution claim fails.

**VII.  Disposition.**

We affirm the judgment of the district court because we do not reach the statute of limitations issues due to the procedural history of this case and because no genuine issue of material fact exists showing Montgomery or Schrader instigated or procured the criminal prosecution against Shuck.

**AFFIRMED.**

All justices concur except Cady, C.J., who takes no part.